<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

MARCO GUINTA,

                           Plaintiff,

v.

ACCENTURE, LLP,

                           Defendant.

Civ. No. 08-3776 (DRD)

**O P I N I O N**

*Appearances by:*

SOKOL, BEHOT AND FIORENZO
by: Susan Burns, Esq.
433 Hackensack Avenue
Hackensack, NJ 07601

    *Attorneys for Plaintiff*

WONG FLEMING, P.C.
by: Linda Wong, Esq.
621 Alexander Road, Suite 150
Princeton, NJ 08543

    *Attorneys for Defendant*

**<u>DEBEVOISE, Senior District Judge</u>**

Defendant Accenture, LLP ("Accenture") moves for reconsideration of the court's

November 6, 2008 Opinion denying summary judgment on Count Five and portions of Counts

Six and Seven of Plaintiff Marco Guinta's Complaint. The Motion will be denied for two

reasons. First, Accenture makes legal arguments which were not previously raised and submits

various documents that – although known to the company and within its control throughout the course of this litigation – were not cited as evidence at the time of the previous Motion for Summary Judgment.  It is well-established that such novel legal theories and documentary evidence cannot form the basis for a grant of reconsideration.  Furthermore, even if the court gave full weight to the new legal arguments and evidence advanced by Accenture, the company has failed to demonstrate that it would be entitled to summary judgment on the claims at issue.

## I.  BACKGROUND

The procedural history of this matter and facts underlying Mr. Guinta's claims are laid out in detail in the court's November 6, 2008 Opinion.  In order to provide context for the current ruling, the court repeats below some of the facts summarized in that Opinion.

### A.  Termination and Complaint

Mr. Guinta is a former employee of Accenture.  He suffers from a shattered voicebox which affects his ability to speak.  That disability does not appear to have limited Mr. Guinta's capacity to perform his duties at Accenture, where he worked from 2002 to 2008.  Indeed, the company acknowledges that his termination on March 12, 2008 was not due to misconduct or poor work performance, but rather a routine "position elimination."

At the time of his termination, Mr. Guinta's base compensation was $230,000 per year. In addition to his salary, Mr. Guinta was eligible for Paid Time Off ("PTO") and performance-based bonuses.  Mr. Guinta's 2007 and 2008 Compensation Models provided that he would receive an "annual incentive" cash bonus and "long term incentive" equity bonus, each equal to his base pay, if he met his yearly target of $40 million in sales.  (Compl., Ex. A, B.)  The terms of the latter bonus provided that it would be paid at the completion of the fiscal year in the form

of equity, but did not specify the form of stock which would be awarded or provide a vesting

schedule for the securities.  (Compl., Ex. A, B.)

    After being fired by Accenture, Mr. Guinta filed identical Complaints in the Superior

Courts of New Jersey for Bergen and Morris Counties.  The Complaints, which were

subsequently removed to this court, contain seven counts.  The first two claim, respectively, that

Accenture terminated Mr. Guinta in violation of the Americans with Disabilities Act ("ADA"),

42 U.S.C. § 12101 et seq., and the New Jersey Law Against Discrimination ("NJLAD"),

N.J.S.A. 10:5-1, et. seq.  Those allegations were not at issue in Accenture's Motion for Summary

Judgment or the November 6, 2008 Opinion. That ruling dealt only with Counts Three through

Seven, which allege that Accenture wrongfully refused to pay Mr. Guinta various benefits after

his termination on March 12, 2008.  Specifically, Mr Guinta claimed in his Complaint that his

2007 and 2008 Compensation Models, along with the terms of Accenture's Separation Benefits

Plan, entitled him to (1) separation benefits of 13 weeks pay plus four months of COBRA

payments, (2) payment for 340 hours of PTO, (3) a 2007 long term incentive equity bonus of

$230,000 in Accenture stock, and (4) both cash and equity bonuses for the period between the

end of the 2007 fiscal year and the termination of his employment.

**B.  November 6, 2008 Opinion**

    Accenture moved for Summary Judgment[1] on August 12, 2008, contending that (1) Mr.

Guinta's refusal to execute a Separation Agreement made him ineligible for severance pay, (2)

the company's PTO policy clearly specified that only 240 hours would be paid out after an

employee's dismissal, (3) Mr. Guinta's 2007 long term incentive equity bonus had not vested at

---

[1] Accenture originally framed its Motion as a request for dismissal pursuant to Federal Rule of
Civil Procedure 12(b)(6).  The court converted the Motion to a request for summary judgment
pursuant to Federal Rule of Civil Procedure 56(c) because it included documentary exhibits not
relied on by the Complaint.  Both parties were given notice of the conversion and time to submit
briefs that took into account the standard of review for such requests.

the time of his termination, and (4) Mr. Guinta's claim for cash and equity bonuses accrued between the end of 2007 and his termination is speculative and Mr. Guinta was not entitled to any bonuses for the 2008 year.

In support of their respective arguments relating to the Motion for Summary Judgment, both parties submitted various contracts and employment documents.  After analyzing at length the terms of those documents, the court in its November 6, 2008 Opinion granted summary judgment on Counts Three and Four, along with the portions of Counts Six and Seven relating to the long term incentive equity bonus.  In the same ruling, however, the court denied Accenture's Motion for Summary Judgment on Count Five and the portions of Counts Six and Seven relating to the annual incentive cash bonus.  In order to understand the reasons underlying the denial of summary judgment on those Counts, it is necessary to engage in a detailed examination of the portions of the court's November 6, 2008 Opinion regarding those claims.

### i. Count Five: Equity Bonus for 2007

In its Motion for Summary Judgment, Accenture contended that Mr. Guinta's claim in Count Five for the 2007 long term incentive equity bonus provided for in his Compensation Model was barred because that bonus was subject to the terms of a separate contract, the "Form of Employee Restricted Share Unit Agreement (Fiscal 2008)" ("RSU Agreement").  The RSU Agreement, which defines an RSU as "the unfunded, unsecured right of the Participant to receive a Share on the date(s) specified herein, subject to the conditions specified herein," includes a heading titled "Vesting Schedule."  (Def.'s Br. Supp. Mot. Summ. J., Ex. G.)  The schedule states that:

> Subject to the Participant's continued employment with the Company ... the RSUs shall vest pursuant to the vesting schedule set forth in the Essential Grant Terms (as modified by this Agreement), until such RSUs are 100% vested.   Upon the

> Participant's termination of employment for any reason, any unvested RSUs shall immediately terminate, and no other shares shall be issued.

(Id.)

The Agreement also contains a section under which the Participant acknowledges that:

> Participant's participation in the Plan is outside the terms of the Participant's contract of employment with the Constituent Companies and is therefore not to be considered part of any normal or expected compensation and that the termination of the Participant's employment under any circumstances whatsoever will give the Participant no claim or right of action against the Company or its Affiliates in respect of any loss of rights under this Agreement or the Plan.

(Id.)

The Essential Grant Terms lay out the specifics of the vesting schedule provided for in the RSU Agreement. That document provides that the shares awarded under the RSU Agreement will vest over a period of three years, with one third vesting each year. (Def.'s Br. Supp. Mot. Summ. J., Ex. J.) Thus, Accenture claimed that under the RSU Agreement and Essential Grant Terms, none of the shares awarded at the end of 2007 as part of Mr. Guinta's equity bonus for that year could have vested by the time he was terminated roughly three months later on March 12, 2008. Since the RSU Agreement provides that unvested shares are forfeited in the event of termination, Accenture argued that Mr. Guinta was barred from asserting the claim for those shares contained in Count Five of the Complaint.

Mr. Guinta never signed the RSU Agreement or otherwise indicated that he agreed to be bound by its terms. Furthermore, the RSU Agreement clearly states that awards granted under its auspices are "outside the terms of the Participant's contract of employment with the Constituent Companies and [are] therefore not to be considered part of any normal or expected compensation." (Def.'s Br. Supp. Summ. J., Ex. G.) Therefore, the court found that Mr. Guinta

was not a party to the RSU Agreement, and the vesting schedule contained in that contract and the Essential Grant Terms applied to his equity grant only if that schedule was incorporated by the 2007 Compensation Model.

After examining the 2007 Compensation Model, the court found no evidence that it incorporated the three-year vesting schedule contained in the RSU Agreement and RSU Essential Grant Terms.  The 2007 Compensation Model clearly states that "the [2007 long term incentive equity] award is to be paid at the completion of the fiscal year," and explicitly disavows the incorporation of terms from any other payment plan by declaring that "[t]his model supersedes any type of other variable pay program or equity program in which you may currently be participating."  (Compl., Ex. A.)  Furthermore, the terms of the RSU Agreement applied only to the 2008 fiscal year, and therefore could not have been incorporated by the 2007 Compensation Model.  (Def.'s Br. Supp. Mot. Dismiss, Ex. G.)  Therefore, the court found that the 2007 long term incentive equity bonus was not subject to any vesting schedule and became due in full at the end of that fiscal year.  Based on that finding, Accenture's request for summary judgment on Count Five was denied.

### ii. Counts Six and Seven:  Cash and Equity Bonuses for 2008

Counts Six and Seven of the Complaint contend that Accenture wrongfully refused to pay Mr. Guinta's "annual incentive" cash bonus and "long term incentive" equity bonus for the period between the end of the 2007 fiscal year and his termination on March 12, 2008.  Those Counts assert, respectively, that (1) Accenture violated the covenant of good faith and fair dealing implied in the 2008 Compensation Plan, and (2) was unjustly enriched as a result of work performed by Mr. Guinta between the end of the 2007 fiscal year and his termination.  In opposition to those allegations, Accenture in its Motion for Summary Judgment set forth a

6

counter-argument to the equity bonus claim, but did not address the allegations that it wrongfully withheld the "annual incentive" cash bonus.  Specifically, Accenture contended that (1) the claims in Count Six and Seven arise out of the RSU Agreement, which states that New York law governs its terms, and (2) under New York law, the facts alleged are not sufficient to state a claim for violation of the implied covenant of good faith and fair dealing or unjust enrichment.

Having decided with reference to Count Five that the terms of the RSU Agreement were not incorporated by the 2007 Compensation Model, the court held in its November 6, 2008 Opinion that the nearly-identical terms of the 2008 Model rendered the RSU Agreement similarly irrelevant to the claims asserted in Counts Six and Seven.  Furthermore, since the 2008 Compensation Plan includes specific provisions that govern the claims asserted in Counts Six and Seven, the court found that there was no need to delve into the intricacies of case law on claims for breach of the implied covenant of good faith and fair dealing or unjust enrichment. Instead, the court resolved the question of whether to grant summary judgment on Counts Six and Seven based on its analysis of the terms of the 2008 Compensation Model.

The 2008 Compensation Model clearly states that "employees who are terminated by Accenture (other than 'for cause') before the end of the quarter in which an Annual Incentive award is earned are entitled to receive the award earned in that quarter."  (Compl., Ex. B.)  To be eligible for that bonus, Mr. Guinta was required to achieve a minimum of 75 percent of his yearly sales target of $40 million.  (Id.)  When pro rated over the four quarters of a fiscal year, Mr. Guinta's sales target was $10 million per quarter.  Therefore, the court held that Mr. Guinta was entitled to at least a minimum annual incentive cash bonus for the each quarter of the 2008 fiscal year in which he achieved sales of at least $7.5 million.  Since Accenture presented no facts which would lead the court to believe that Mr. Guinta did not meet his sales targets for the

quarters of 2008 in which he was employed by the company, summary judgment was denied on

the portions of Counts Six and Seven relating to the annual incentive bonus.

In contrast to the annual incentive cash bonus, the court found that Mr. Guinta was not

entitled to a pro-rated equity bonus for the portion of 2008 in which he was employed by

Accenture.  The 2008 Compensation Model states with respect to the long term equity bonus that

"this award, if you qualify, will be granted following the completion of the fiscal year."

(Compl., Ex. B.)  By enumerating the specific time at which the bonus was to be granted, the

2008 Compensation Model precluded any earlier award and conditions eligibility on continued

employment at the end of the fiscal year.  Therefore, the court in its November 6, 2008 Opinion

granted summary judgment in favor of Accenture on the portions of Counts Six and Seven

relating to the long term incentive equity bonus.

**C.  The Pending Motion for Reconsideration**

In the Motion currently before the court, Accenture argues that a provision in both the

2007 and 2008 Compensation Models which states that "Accenture reserves the right to amend,

modify, or withdraw this model at any time, with or without notice," see (Compl.,

Ex. A, B.), rendered the promises contained in those documents illusory.  On the basis of that

contention, Accenture urges the court to find that the Compensation Models were non-binding

and it was therefore under no obligation to make any payment whatsoever to Mr. Guinta at the

time of his termination.  (Def.'s Br. Supp. Mot. Reconsideration 8-10.)

In addition to its legal argument that the Compensation Models were non-binding,

Accenture makes two new factual allegations in its Motion for Reconsideration.  First, the

company claims that Mr. Guinta accepted equity bonuses subject to the vesting schedule in the

RSU Agreement and Essential Grant Terms in 2005 and 2006.  (Def.'s Br. Supp. Mot.

Reconsideration 12.)  Based on that alleged prior practice, Accenture argues that an implied-in-fact contract existed based on the mutual understanding of the parties that the 2007 long term equity bonus at issue in Count Five was also subject to the three-year vesting schedule, such that one third of the bonus would vest each calendar year after it was granted.  (Id.)  Since Mr. Guinta was terminated less than one year after becoming eligible for the bonus, Accenture claims that he was not entitled to any equity payment and requests that the court reconsider its denial of summary judgment on Count Five.  (Id. 12-13.)

With respect to the annual incentive cash bonus at issue in Counts Six and Seven, Accenture presents new factual evidence in its Motion for Reconsideration in an attempt to demonstrate that Mr. Guinta did not meet the eligibility requirements to receive that bonus for the quarters between the end of the 2007 fiscal year and his termination.[2]  Specifically, the company claims that Mr. Guinta "failed to submit his booked sales" by completing a "sales tracking template" before his departure, and that in not doing so he "failed to perform under the 2008 Compensation Model."  (Def.'s Br. Supp. Mot. Reconsideration 3-4, 14.)  On the basis of that allegation, Accenture requests that the court reconsider its earlier opinion and grant summary judgment on the portions of Counts Six and Seven relating to the annual incentive cash bonus.

---

[2] In its November 6, 2008 Opinion, the court ruled that Mr. Guinta would be entitled to an annual incentive cash bonus for the first quarter of 2008 if he met his sales targets for January, February, and March of that year.  That ruling was based on the court's impression that Accenture's 2007 fiscal year coincided with the calendar year, which was in turn based on Mr. Guinta's allegation in the Complaint that "[d]uring the months of January, February and March, the business that Guinta had generated or was in the process of generating would have resulted in his reaching his target sales by the end of the year."  (Compl. ¶ 60.)  In light of the statement contained in Exhibit M to Accenture's Motion for Reconsideration that "[t]he second quarter of FY08 will end as of February 29, 2008," it now appears that Mr. Guinta's termination may have taken place during the third quarter of that year.  If that proves to be the case, Mr. Guinta would be entitled under the court's November 6, 2008 ruling to a pro-rated annual incentive cash bonus for each of the three quarters of 2008 in which he met his sales target.

## II. DISCUSSION

Accenture's arguments in favor of reconsideration suffer from two deficiencies: (1) they

impermissibly rely on newly-introduced legal theories and factual evidence, and (2) even if true,

do not justify a grant of summary judgment.  Therefore, Accenture's Motion for Reconsideration

will be denied.

### A.  Standard of Review

"[I]t is well-established in this district that a motion for reconsideration is an extremely

limited procedural vehicle."  Resorts Int'l v. Greate Bay Hotel & Casino, 830 F. Supp. 826, 831

(D.N.J. 1992).  As such, a party seeking reconsideration must satisfy a high burden, and must

"rely on one of three major grounds: (1) an intervening change in controlling law; (2) the

availability of new evidence not available previously; or (3) the need to correct clear error of law

or prevent manifest injustice."  North River Ins. Co. v. CIGNA Reins. Co., 52 F.3d 1194, 1218

(3d Cir. 1995).

Since the evidence relied upon in seeking reconsideration must be "newly discovered," a

motion for reconsideration may not be premised on legal theories that could have been

adjudicated or evidence which was available but not presented prior to the earlier ruling.  See Id.

Local Civil Rule 7.1(i), which governs such motions, provides that they shall be confined to

matter[s] or controlling decisions which the party believes the Judge or Magistrate Judge has

"overlooked."  The word "overlooked" is the dominant term, meaning that except in cases where

there is a need to correct a clear error or manifest injustice, "[o]nly dispositive factual matters

and controlling decisions of law which were presented to the court but not considered on the

original motion may be the subject of a motion for reconsideration."  Resorts Int'l, 830 F. Supp.

at 831; see also Egloff v. N.J. Air Nat'l Guard, 684 F. Supp. 1275, 1279 (D.N.J. 1988); Florham

Park Chevron, Inc. v. Chevron U.S.A., Inc., 680 F. Supp. 159 (D.N.J. 1988); Pelham v. United

States, 661 F. Supp. 1063, 1065 (D.N.J. 1987).

**B.  The Pending Motion**

Accenture does not allege that there has been any change in the controlling law since the

court's November 6, 2008 Opinion, and cannot show that it would suffer any manifest injustice

if reconsideration were denied.  Therefore, the company must demonstrate that (1) "the

availability of new evidence not available previously," or (2) "the need to correct clear error of

law" in order to prevail.  It has done neither.

The main argument on which Accenture's Motion for Reconsideration is premised – that

the clause in the Compensation Models allowing the company to modify or abrogate them at any

time rendered them non-binding – is a novel legal theory which could have been pursued during

the earlier summary judgment proceedings, but was not.  As such, that argument cannot form a

proper basis for reconsideration.  See North River Ins. Co., 52 F.3d at 1219 (affirming district

court's denial of reconsideration based on issue that was not raised during summary judgment

proceedings); Resorts Int'l, 830 F. Supp. at 831.

Accenture attempts to disguise its efforts to obtain a second bite at the proverbial apple

by arguing that "the Court did not notice" the portions of the Compensation Models stating that

the company had the right to modify or abrogate those agreements.  (Def.'s Br. Supp. Mot.

Reconsideration 8.)  Given the fact that the clause at issue was specifically quoted on page six of

the November 6, 2008 opinion, that argument is unavailing.  The purpose of a motion for

reconsideration is to accommodate changes in the governing law or factual circumstances which

formed the basis for the previous decision, not to endlessly relitigate issues that have already

been decided by allowing the parties to set forth arguments they previously chose to withhold.

See North River Ins. Co., 52 F.3d at 1218.  Therefore, Accenture's new legal theories will not be credited and the Motion will be denied.

Even if the court gave full weight and consideration to Accenture's argument that the clause allowing the company to modify or abrogate the Compensation Models rendered those agreements non-binding, reconsideration would not be warranted.  Accenture does not allege that it actually did modify or withdraw either the 2007 or 2008 Compensation Model prior to Mr. Guinta's termination.  Rather, the company argues only that the contractual language allowing it to do so rendered the promises contained in those agreements illusory.  (Def.'s Br. Supp. Mot. Reconsideration 8-11.)  Thus, the offers contained in the Compensation Models – that Mr. Guinta would be paid the specified salary and bonuses in exchange for his work (which Accenture concedes he adequately performed) – remained in force throughout the time period in question.  In such situations, promissory estoppel and unilateral contract principles make it clear that "once the employee performs, the offer becomes irrevocable, the contract is completed, and the employer is required to comply with its side of the bargain."  Kemmerer v. ICI Americas, Inc., 70 F.3d 281, 287 (3d Cir. 1995).  "[E]ven when a plan reserves to the sponsor an explicit right to terminate the plan, acceptance by performance closes that door under unilateral contract principles."  Id.; see also In re New Valley Corp., 89 F.3d 143, 151 (3d Cir. 1996) (stating that an employer who reserves the right to terminate or modify a contract "at any time" may not do so after the employee has performed).  Therefore, Accenture's argument that it was free to decide what, if anything, to pay Mr. Guinta for his work is unfounded and cannot form a proper basis for reconsideration.

Accenture's two factual arguments are similarly unavailing.  In the first, the company alleges that before 2007 Mr. Guinta accepted equity bonuses subject to the vesting schedule in

the RSU Agreement and RSU Essential Grant Terms in 2005 and 2006.  (Def.'s Br. Supp. Mot. Reconsideration 12.)  Based on that alleged prior practice, Accenture argues that it was the mutual understanding of the parties that the 2007 long term equity bonus at issue in Count Five was also subject to the three-year vesting schedule.  (Id.)  That contention suffers from two deficiencies.  First, it depends on alleged facts that were known to Accenture at the time of the summary judgment proceedings and are therefore not "newly discovered."  As discussed above, such alleged facts cannot form a proper basis for reconsideration.  See North River Ins. Co., 52 F.3d at 1218; Resorts Int'l, 830 F. Supp. at 831.  Furthermore, Mr. Guinta disputes the veracity Accenture's claim that he previously accepted equity bonus compensation subject to the vesting schedule, arguing that the payment to which Accenture refers was a one-time signing bonus disbursed at the time he was hired, and is therefore dissimilar to the equity bonus provided for by the 2007 Compensation Model.  (Pl.'s Br. Opp'n Mot. Reconsideration 5-6.)  Since a grant of reconsideration would result in summary judgment, Accenture bears the burden of demonstrating that no genuine issue of material fact exists.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  Therefore, Accenture may not rely the alleged prior practice in order to obtain reconsideration, and the current Motion must be denied.

In the second of its newly-introduced factual arguments, Accenture contends that Mr. Guinta "failed to submit his booked sales" by completing a "sales tracking template" before his departure, and that in not doing so he "failed to perform under the 2008 Compensation Model." (Def.'s Br. Supp. Mot. Reconsideration 12.)  On that basis, the company claims that Mr. Guinta did not meet the criteria to receive an annual incentive cash bonus for the quarters between the end of the 2007 fiscal year and his termination.  Again, Accenture's argument is unavailing.  It relies on alleged facts that are not "newly discovered," and are therefore inappropriately raised

on a motion for reconsideration.  See North River Ins. Co., 52 F.3d at 1218; Resorts Int'l, 830 F.

Supp. at 831.  In fact, Accenture introduces company e-mails dated March 18 and April 16, 2008

in support of its claim, see (Def.'s Br. Supp. Mot. Reconsideration, Ex. M, N.); e-mails which

have been in the possession of the company during the entirety of the proceedings and could

easily have been produced at the summary judgment stage.

Additionally, it is unclear that Accenture's factual allegations with respect to the annual

incentive cash bonus for the quarters between the end of 2007 and Mr. Guinta's termination

would justify reconsideration even if credited and assumed to be true.  The argument that Mr.

Guinta's failure to submit a "sales tracking template" before his departure rendered him

ineligible for the bonus has no basis in the language of the 2008 Compensation Model.  That

document provides that "employees who are terminated by Accenture (other than 'for cause')

before the end of the quarter in which an Annual Incentive award is earned are entitled to receive

the award earned in that quarter." (Compl., Ex. B.)  To be eligible for the bonus, Mr. Guinta was

required to achieve a minimum of 75 percent of his yearly sales target of $40 million, or $7.5

million in sales per quarter.  (Id.)  The 2008 Compensation Model says nothing about how those

sales are to be tracked, and does not impose any requirement that Mr. Guinta submit a particular

type of documentation to Accenture by a given date.  Therefore, Accenture has not established

that it is entitled to judgment as a matter of law, and the Motion for Reconsideration must be

denied.

### III.  CONCLUSION

For all the foregoing reasons, Accenture's Motion for Reconsideration is denied.  The

court will enter an order implementing this opinion.


 s/ Dickinson R. Debevoise_____
DICKINSON R. DEBEVOISE, U.S.S.D.J.


Dated: January 22, 2009

15